## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00052-TWP-DML |
| | ) | |
| CENTRAL HOTEL, INC., | ) | |
| PADGET DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff Scottsdale Insurance Company ("Scottsdale") (Filing No. 37) and Defendant Padget Davis ("Davis") (Filing No. 47). Davis filed suit in Indiana state court against Defendant Central Hotel, Inc. ("Central Hotel") (Davis and Central Hotel together, "Defendants"), a tavern in Jefferson County, Indiana, following an automobile collision between Davis and one of Central Hotel's intoxicated patrons. Central Hotel submitted a claim to its insurer, Scottsdale, for defense and indemnity in the state court action. A dispute arose between Scottsdale and Central Hotel regarding coverage, and this declaratory judgment action followed. Scottsdale and Davis filed cross-motions for summary judgment regarding Central Hotel's entitlement to coverage. For the following reasons, the Court **grants** Scottsdale's motion and **denies** Davis' cross motion.

## I.      BACKGROUND

### A.      The Policy

Scottsdale issued Commercial Excess Liability Policy No. XBS0110577 (the "Policy") to Central Hotel, for the period from September 17, 2019 to September 17, 2020, (Filing No. 38 at 2;

Filing No. 1-2).  The Policy provides coverage for claims covered by Central Hotel's two primary, underlying liability insurance policies (the "Underlying Policies") to the extent those claims exceed the Underlying Policies' limits (Filing No. 38 at 2).[1]  The Policy states, in part:

> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance". . . .

> **SECTION I – COVERAGES**

> 1. **Insuring Agreement**

>   a.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.

>     We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance". . . .

(Filing No. 1-2 at 8 (emphasis in original)). The Policy contains and incorporates by reference certain exclusions to coverage:

> 2. **Exclusions**

>     The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part. In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part. . . .

*Id.* at 9 (emphasis in original).

---

[1] The Underlying Policies were issued by non-parties Auto Owners Insurance and Mount Vernon Fire Insurance Company (Filing No. 1-2 at 7).

The exclusions at issue here are an auto liability exclusion (the "Auto Exclusion") and an assault and battery exclusion (the "Assault and Battery Exclusion"), which are contained in endorsements to the Policy. The endorsements state:

The following exclusion is added to paragraph **2. Exclusions**:

Insurance provided under this Coverage Part does not apply to:

**Auto Liability**

Any "injury or damage" arising out of the ownership, maintenance, operation, use, loading or unloading or entrustment to others of any auto.

. . . .

**Assault And/Or Battery**

"Injury or damage" arising from:

1. Assault and/or Battery committed by any insured, any employee of any insured, or any other person;

2. The failure to suppress or prevent Assault and/or Battery by any person in **1.** above . . . .

(Filing No. 1-2 at 48, 27 (emphasis in original)).

**B.    The Automobile Collision and State Court Action**

On October 9, 2019, Davis was involved in an automobile collision with non-party Rodney Beagles ("Beagles"). On April 13, 2021, Davis filed a lawsuit against Central Hotel and others in Jefferson Circuit Court, Indiana, titled *Davis v. Central Hotel*, under Cause No. 39C01-2006-CT-00347 (the "State Court Action"), seeking damages resulting from the collision (Filing No. 38 at 4; Filing No. 38-1). In her state court complaint, Davis alleges Central Hotel served alcohol to Beagles despite knowing he was visibly intoxicated (Filing No. 38-1). She alleges that after Beagles left Central Hotel in his automobile, he veered into oncoming traffic and struck Davis' automobile. Davis sued Central Hotel for violating Indiana's Dram Shop Act, I.C. § 7.1-5-10-15.5, and for negligence. *Id.*

Central Hotel sought coverage for the State Court Action under the Policy.  Scottsdale filed this action for a declaratory judgment that it is not obligated to defend or indemnify Central Hotel.[2] Scottsdale and Davis have filed cross-motions for summary judgment seeking a declaration that Central Hotel is entitled to coverage under the Policy.

## II.    LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to

---

[2] Central Hotel has not moved for summary judgment, but it has filed a response in opposition to Scottsdale's Motion for Summary Judgment (Filing No. 51).

relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arb. Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

## III.   DISCUSSION

Scottsdale argues the Auto Exclusion clause unambiguously precludes coverage for claims related to the collision between Davis and Beagles. Davis and Central Hotel contend that the Auto Exclusion is ambiguous and does not apply because the efficient, predominating cause of Davis' injuries was Central Hotel's negligent service of alcohol, not Beagles' use of an automobile. They further argue that the Policy offers only illusory coverage, and that the Court must enforce

coverage to satisfy Central Hotel's reasonable expectations of coverage. The Court will address whether the Auto Exclusion is unambiguous and whether it applies to preclude coverage before discussing whether coverage under the Policy is illusory.

**A.       Whether the Auto Exclusion is Unambiguous**

The parties agree that Indiana law governs the interpretation of the Policy.  *See Officer v. Chase Ins. Life & Annuity Co.*, 541 F.3d 713, 715 (7th Cir. 2008) ("When sitting in diversity, we must apply the substantive law of the state as we believe the highest court of that state would apply it.").  Under Indiana law, an insurance contract "is subject to the same rules of interpretation as are other contracts."  *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 666 (Ind. 2006).  When the contract language is clear and unambiguous, it should be given its plain meaning.  *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002).  "Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, Indiana courts construe insurance policies strictly against the insurer."  *Auto–Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012) (citation omitted).  However, "an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Beam*, 765 N.E.2d at 528 (citation omitted). Ultimately, "[t]he meaning of an insurance contract can only be gleaned from a consideration of all its provisions, not from an analysis of individual words or phrases." *Westfield Cos.*, 804 N.E.2d at 1274.

The Auto Exclusion states that coverage is not provided for:

**Auto Liability**

Any "injury or damage" arising out of the ownership, maintenance, operation, use, loading or unloading or entrustment to others of any auto.

(Filing No. 1-2 at 48 (emphasis in original)).  Scottsdale argues this language unambiguously applies to claims arising out of the ownership, maintenance, operation, use, loading or unloading,

or entrustment (hereinafter, "use") of *any* automobile, including third parties' automobiles (Filing No. 54 at 2). Defendants argue the Auto Exclusion is ambiguous because it is titled "Auto Liability" and because its terms and definitions are circular and confusing (Filing No. 1-2 at 48).

Defendants assert that the phrase "auto liability" is "commonly understood" to mean liability arising from only the insured's or its agent's use of an automobile (*i.e.*, "the kind of exposure for which one purchases standard auto insurance") and could reasonably be construed to apply to only automobiles used by an insured or its agents (Filing No. 48 at 10; Filing No. 51 at 4; Filing No. 63 at 5). The Court is unpersuaded by Defendants' argument for three reasons. First, "headings are not conclusive as to the substantive provision of" contracts. *Klitz v. Klitz*, 708 N.E.2d 600, 602 (Ind. Ct. App. 1999). Second, Defendants' argument focuses exclusively on the Auto Exclusion's heading and ignores its substance, running afoul of Indiana's requirement that courts construe insurance contracts as a whole, and not based on individual words or phrases. *Westfield Cos.*, 804 N.E.2d at 1274. Third, and most importantly, Defendants offer no support whatsoever for their assertion regarding the "common understanding" of "auto liability." The title "Auto Liability" creates no ambiguity.[3]

Defendants next argue that the Auto Exclusion is ambiguous because its language and defined terms cannot be understood or applied by an ordinary policyholder of average intelligence (Filing No. 48 at 10; Filing No. 51 at 4). The Court is not persuaded and does not find that the

---

[3] Defendants cite *Minden v. Atain Specialty Insurance Co.*, No. 11CV01284, 2013 WL 5106519 (E.D. Mo. Sept. 12, 2013), in arguing that an ambiguous auto exclusion should be construed to apply only to automobiles used by the insured or its agents. Because the Court finds that the Auto Exclusion is unambiguous, *Minden* does not apply.

Similarly, Defendants' reliance on *Essex Ins. Co. v. City of Bakersfield*, 154 Cal. App. 4th 696 (Cal. Ct. App. 2007), is misplaced. In *Essex*, the California Court of Appeals, applying California law, held that an average layperson would not understand an auto exclusion to preclude "coverage in any cases involving automobiles by anyone anywhere." 154 Cal. App. 4th at 707. However, *Essex* is not controlling and has been distinguished by other California courts and criticized for reading limitations into the policy's terms. *See, e.g.*, *One Call Med., Inc. v. Nat'l Fire & Marine Ins. Co.*, 401 F. Supp. 3d 994, 1002 (E.D. Cal. 2019); *Maxum Indem. Co. v. Kaur*, 356 F. Supp. 3d 987, 1005 (E.D. Cal. 2018).

policy language is convoluted. The Auto Exclusion states the Policy does not apply to "injury or damage" (defined as injury or damage covered by the "controlling underlying insurance") arising from an "event" (defined as "an occurrence, offense, accident, act, or other event" covered by the "controlling underlying insurance") and arising from the use of "any auto" (Filing No. 1-2 at 12). Stated simply, the Auto Exclusion precludes coverage for any injury or damage covered by the Underlying Policies and arising out of the use of an automobile. Although insurance policies are typically not models of clarity, an ordinary policyholder of average intelligence would be able to understand and apply the Auto Exclusion.

The Court finds the cases by Scottsdale to be instructive in determining whether the Auto Exclusion is unambiguous. In *Nautilus Insurance Co. v. JDW Inc.*, 18-CV-190, 2021 WL 5083716, (N.D. Ind. Nov. 2, 2021), a third party became intoxicated at a local tavern and struck a pedestrian with his automobile when attempting to exit the parking lot. *Id.* at *1. The pedestrian sued the tavern, and the tavern sought coverage from its insurer. The tavern's insurance policy excluded coverage for injuries or damages "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . ." *Id.* The tavern, like Defendants, argued that the exclusionary language "seem[ed] to apply to vehicles entrusted to the insured, suggesting that the provision [was] ambiguous." *Id.* at *4. The court, applying Indiana law disagreed, finding that the exclusionary language was unambiguous and stating that the tavern's "arguments ignore[d] the exclusion's actual language. There is nothing requiring that the car be owned or used by the insured or its agents; rather, it excludes coverage of incidents caused by 'the ownership, maintenance, use or entrustment to others *of any* . . . 'auto.'" *Id.* at *4 (emphasis in original). The same reasoning applies here. The Auto Exclusion states that it applies to the use of "any auto," and makes no mention of the insured or its agents. It is unambiguous and must be given its plain meaning.

Davis argues *JDW* is inapplicable because it involved a primary liability policy, not an excess policy, and because it was not titled an "Auto Liability Exclusion" (Filing No. 63 at 3). The Court again disagrees with Davis. The Court does not need to know whether a policy provides primary or excess coverage, or even the scope of coverage, to determine whether an exclusion is unambiguous. The fact that *JDW* involved a primary policy is therefore an immaterial distinction. The fact that the auto exclusion in *JDW* was not titled "Auto Liability Exclusion" is likewise immaterial. As the Court has already noted, Defendants have not shown that the title "Auto Liability" creates any ambiguity, and the Court "will not read additional language or assumptions into [an] exclusion." *JDW*, 2021 WL 5083716, at *3.

The Court's conclusion that the Auto Exclusion is unambiguous is consistent with not only *JDW*, but also several other cases nationwide, all of which found that policy exclusions for claims arising out of the use of "any auto" unambiguously applied to the use of third parties' automobiles. *See, e.g.*, *Allstate Ins. Ct. v. Naai*, 490 F. App'x 49, 50–51 (9th Cir. 2012) (concluding that the exclusion "by its terms . . . does not cover bodily injury arising out of the operation of any motor vehicle"); *Covington Specialty Co. v. Potter*, 20-CV-0613, 2021 WL 4288446, at *7 (N.D.N.Y. Sept. 21, 2021) (stating the exclusion "focuses on the connection between a vehicle and the injured, not between a vehicle and the insured"); *One Call Med., Inc. v. Nat'l Fire & Marine Ins. Co.*, 401 F. Supp. 3d 994, 1002 (E.D. Cal. 2019) ("An average layperson would not assume the exception was limited to motor vehicles owned or operated by the insured based on the language 'any motor vehicle.'"); *Nautilus Ins. Co. v. Bike & Build, Inc.*, 340 F. Supp. 3d 399, 412 (E.D. Pa. 2018) ("Nothing in the wording of the Exclusion limits it to bodily injury arising out of the use of the insured's use of an auto or the auto owned by the insured.").

The Auto Exclusion is unambiguous, so the Court will apply its plain meaning in determining whether it precludes coverage for Davis' claims against Central Hotel. *Beam*, 765 N.E.2d 524, 528.

**B.      Whether the Auto Exclusion Precludes Coverage**

To determine whether the Auto Exclusion precludes coverage for Davis' claims against Central Hotel, the Court must apply Indiana's "efficient and predominating" cause test. *See Ebert*, 188 N.E.3d at 865 (citing *Property-Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973, 981 (Ind. Ct. App. 2006)). To determine the efficient, predominating cause of Davis' injuries, the Court looks to her allegations in the State Court Action. *Ebert*, 188 N.E.3d at 867. Her complaint alleges:

> 4.      That on or about the 9th day of October 2019, Plaintiff was driving a Chevy Van with all due care southbound on Michigan Road in Jefferson County, Indiana.
>
> 5.      That . . . Beagles was driving a Toyota Tacoma on Michigan Road in Jefferson County.
>
> 6.      That . . . Beagles was operating his Toyota Tacoma while under the influence of alcohol and in such a negligent manner as to cause it to cross the center line and crash into the vehicle driven by Plaintiff. . . .
>
>          . . . .
>
> 9.      That on October 9, 2019[,] Defendant Central Hotel did barter, deliver, sell, exchange, serve, provide or give away alcoholic beverage(s) (hereinafter referred to as "furnish(ed)") to Rodney Beagles.
>
> 10.     That . . . Defendant Central Hotel negligently furnished the aforementioned alcoholic beverage(s) to Beagles in full knowledge that Beagles was visibly intoxicated . . . .
>
> 11.     That as a direct and proximate result of the foregoing negligence of Defendant Central Hotel, Beagles drove his Toyota Tacoma while intoxicated and struck Plaintiff in the vehicle she was operating, causing serious injuries.

(Filing No. 38-1 at ¶¶ 4–6, 9–11).

In summary, Davis alleges that Central Hotel served Beagles alcohol, that Beagles drove his automobile from the premises while intoxicated, and that his automobile collided with Davis's automobile. Based on these allegations, and consistent with Indiana courts' conclusions in analogous cases, the Court concludes that the efficient and predominating cause of Davis' injuries was Beagles' drunk driving following the service of alcohol by Central Hotel. *See Ebert*, 188 N.E.3d at 867 ("[W]e restate the Eberts' allegations as follows: Big Daddy's served Spence alcohol, and he subsequently drove his vehicle from the premises while intoxicated and collided with Eberts' vehicle. Thus, the efficient and predominating cause of the collision was Spence's drunk driving after he was served alcohol at Big Daddy's.").

Defendants argue that Central Hotel's liability arises solely from its negligent service of alcohol, and not Beagles' driving, so the Auto Exclusion does not apply (Filing No. 48 at 10 ("The liability alleged against [Central] Hotel is 'Liquor Liability', not 'Auto Liability' . . . .")). However, Beagles' drinking and his driving cannot be so easily separated. Indiana courts have repeatedly rejected claimants' attempts to compartmentalize an insured's negligence and a subsequent automobile collision to avoid application of an auto liability exclusion.

The Indiana Court of Appeals first rejected such an attempt in *Sharp v. Indiana Union Mutual Insurance Co.*, 526 N.E.2d 237 (Ind. Ct. App. 1988). In *Sharp*, the insured consumed an unknown amount of alcohol in his home before driving and caused a head-on collision with one of the plaintiff's automobile. *Id.* at 238. The insured sought coverage under his homeowner's insurance policy. The policy excluded injuries and damage "*arising out of the ownership, maintenance, use, loading or unloading of: . . . (2) a motor vehicle, owned or operated by, or*

*rented or loaned to any insured . . . ."* [4]  *Id.* at 239 (emphasis and omissions in original).  The Indiana Court of Appeals found that the exclusionary language was unambiguous. "Therefore, if the efficient and predominant cause of Sharp's injuries arose from the use of [the insured's] automobile, then Sharp's injuries are not covered by [the] homeowner's insurance." *Id.* The plaintiffs argued that "while the use of a motorized vehicle caused Sharp's injuries, such use was only a concurrent cause of those injuries.  A separate cause of Sharp's injuries was [the insured's] act of drinking to the point of intoxication while in his home." *Id.* at 239–40.  The plaintiffs also cited out-of-state caselaw "in support of the proposition that where two separate, independent acts of negligence combine to cause injury and one of those acts is excluded from coverage . . . , the policy will still cover the damage incurred if the other act of negligence is not excluded under the policy." *Id.* at 240.  The Indiana Court of Appeals rejected plaintiffs' argument, stating that the insured's "consumption of alcohol prior to driving his automobile did not cause any injury which was independent of the use of his motor vehicle. It is only the act of driving an automobile while intoxicated that causes injuries or gives rise to an accident." *Id.*  The same rationale applies here. Although Central Hotel's service of alcohol to Beagles may have been negligent, it is not a separate and independent cause of Davis' injuries.

The Indiana Court of Appeals has used the same reasoning in several subsequent cases.  In *Wright v. American States Insurance Co.*, 765 N.E.2d 690 (Ind. Ct. App. 2002), a van owned and operated by the insured, a nursery, and driven by one of its employees, was involved in a collision. The parents of two children in the van during the collision sued the insured nursery for negligently failing to investigate the employee's driving record and negligently employing an incompetent

---

[4] Although the exclusionary language in *Sharp*, unlike the Auto Exclusion here, applies only to an automobile used by the insured, *Sharp* is still instructive in determining whether Beagles' use of his automobile was the "efficient and predominant" cause of Davis' injuries.

driver.  The nursery sought coverage under its commercial general liability policy, which excluded claims for injuries "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured."[5] *Id.* at 693. The parents argued their negligence claims were not excluded from coverage. The Indiana Court of Appeals disagreed, noting that "whatever theory of liability the resourceful attorney may fashion from the circumstances of a client struck by an automobile, it remains that the immediate and efficient cause of the injury is, in fact, the automobile." *Id.* at 697 (quoting *N.H. Ins. Co. v. Jefferson Ins. Co. of N.Y.*, 213 A.D. 2d 325 (N.Y. App. Div. 1995)).  The *Wright* court continued, "[w]ithout the use of the van, there would be no lawsuit. Parents[] are not alleging that [the nursery's] failure to investigate Harris' driving record, or its employment of an incompetent driver with a suspended license was a separate or independent proximate cause of the harm." *Id.*

In *Illinois Farmers Inc. Co. v. Weigand*, 808 N.E.2d 180 (Ind. Ct. App. 2004), *transfer denied*, a young girl took her parents' ATV for a ride with her friend.  While driving the ATV, the friend struck a tree and suffered severe injuries.  *Id.* at 182.  The friend's parents sued the ATV's owners for negligence, including negligent entrustment, supervision, and failure to warn.  *Id.*  The owners sought coverage under their homeowners' insurance policy, which excluded injuries "result[ing] from the ownership, maintenance, use, loading or unloading of: . . . b. motor vehicles" and "from the entrustment of . . . motor vehicles . . . ."  *Id.* at 182–83.  The trial court found there was a genuine issue of material fact concerning whether the friend's parents' negligent supervision claim was excluded under the auto exclusion, but the Court of Appeals reversed, holding that "a negligent supervision claim, like the one here, is excluded from coverage where the injury would not have resulted but for the use of the motor vehicle."  *Id.* at 191.

---

[5] *See supra* fn. 4.

And in *Wells v. Auto Owners Insurance Co.*, 864 N.E.2d 356 (Ind. Ct. App. 2007), the Indiana Court of Appeals relied on *Wright* and *Weigand* in again holding that negligence claims related to an automobile collision fell within an auto exclusion.  In *Wells*, a pickup truck operated by the insured's employee struck and killed a motorcyclist.  *Id.* at 358.  The motorcyclist's estate sued the insured for negligent entrustment, hiring, supervision, and retention, and also alleged the employee had been under the influence of alcohol.  *Id.*  The insured's policy excluded coverage for injuries "arising out of the ownership, maintenance, or the use of: (b) any motorized land vehicle designed for travel on public roads or subject to motor vehicle registration."  *Id.* at 359. The estate argued that its negligence claims were not excluded, but the Indiana Court of Appeals again disagreed.  "Although the policies in *Wright* and *Weigand* both make specific reference to entrustment in the exclusion section . . . , the same result should be reached here. There can be no doubt that but for the negligent use of the pickup truck there would be no lawsuit."  *Id.* at 360.

Here, without Beagles' use of his automobile, Davis would have no claim against Central Hotel. Central Hotel's service of alcohol is "so inextricably intertwined with the motor vehicle, there is no independent nonauto-related act which would take the claim out of the scope of the motor vehicle exclusionary clause."  *Weigand*, 808 N.E.2d at 191; *see Ebert*, 188 N.E.3d 858. "That is, 'without use of the [automobile], there would be no claim . . . ' against the insured." *Property-Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973, 981 (Ind. Ct. App. 2006) (quoting *Weigand*, 808 N.E.2d at 190) (finding liquor liability exclusion precluded coverage for claims against tavern for negligent hiring, training, and supervision, arising from intoxicated patron's automobile collision with third party); *see Ebert*, 188 N.E.3d at 868 (finding that bar's negligent service of alcohol to patron was "inextricably intertwined" with patron's use of vehicle in drunk driving collision and applying liquor liability exclusion); *accord Grinnell Mut. Reinsurance Co.*

14

*v. Detamore*, No. 17 CV 044, 2018 WL 1709612, at *3 (N.D. Ind. Apr. 9, 2018) (citing *Wright*, *Weigand*, and other similar cases in holding auto exclusion precluded coverage for claims of negligent provision of a chattel that allegedly led to automobile accident); *Garver v. IDS Prop. Cas. Ins. Co.*, 14 N.E.3d 136 (Table) (Ind. Ct. App. 2014) (unpublished) (finding that insured's negligent supervision of son, who drunkenly caused collision, was "inextricably intertwined" with use of automobile, bringing negligence claim within auto liability exclusion). The Auto Exclusion's terms preclude coverage for the State Court Action and for any other claims arising from the collision between Davis and Beagles.

## C.   Whether the Policy Provides Only Illusory Coverage

Finally, Davis and Central Hotel argue that even if the Policy's language is unambiguous, its Auto and Assault and Battery Exclusions are so broad that they render coverage illusory. Defendants accordingly ask that the Court enforce coverage to satisfy Central Hotel's reasonable expectations of coverage (Filing No. 48 at 12; Filing No. 51 at 6). Davis offers expert testimony from Vincent D. Boylan ("Boylan") regarding the illusory nature of the Policy and Central Hotel's reasonable expectations of coverage. Scottsdale argues the Policy is not illusory and that Boylan's testimony consists of inadmissible legal opinions (Filing No. 54 at 13).

### 1.   Indiana's Two-Step Analysis for Illusory Coverage Arguments

An insurance policy is illusory if it is "basically valueless to the insured" because the insured would "not recover benefits under any reasonably expected set of circumstances." *Nautilus Ins. Co. v. Sunset Strip, Inc.*, No. 1:14-cv-01273-MJD-WTL, 2015 WL 4545876, at *6 (S.D. Ind. July 28, 2015) (quoting *Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502, 507 (Ind. Ct. App. 1991)). If a policy is illusory, courts will not enforce the policy based on its terms and must instead enforce it "to satisfy the reasonable expectations of the insured." *Id.* at 508.

Indiana courts address illusory coverage arguments using a two-step analysis. First, the court determines whether the policy is indeed illusory. Coverage is illusory if it does not apply in "any reasonably expected set of circumstances." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 879 (7th Cir.1999) (citations omitted). If the Court determines coverage is not illusory, then the Policy's unambiguous terms control, and the Auto Exclusion precludes coverage for the State Court Action and any other claims against Central Hotel arising from the collision between Davis and Beagles. *Sunset Strip*, 2015 WL 4545876, at *6. But if the Court determines coverage is illusory, then it must proceed to step two. Step two asks whether the insured's reasonable expectations of coverage would include the claim at issue and requires the Court to apply coverage according to the insured's reasonable expectations. *Id.*

## 2.     Threshold Admissibility Issues

Before beginning the two-step analysis, the Court must briefly address two threshold admissibility issues. First, Defendants have failed to offer admissible evidence of the Underlying Policies (Filing No. 48-2). Davis filed an affidavit from her counsel authenticating the Underlying Policies, but the Underlying Policies are still hearsay, which the Court may not consider on summary judgment. *See Carlisle v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009). Davis' counsel's affidavit does not bring the Underlying Policies within any exception to the rule against hearsay. The affidavit cites only Federal Rule of Evidence 106 (the "rule of completeness"), but "a party cannot use the doctrine of completeness to circumvent Rule 803's exclusion of hearsay testimony." *United States v. Vargas*, 689 F.3d 867, 876 (7th Cir. 2012) (citing *United States v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011)), *abrogated on other grounds*, *Burton v. City of Zion*, 901 F.3d 772, 778 (7th Cir. 2018). This evidentiary failure poses a problem for Defendants because, as Davis notes, the Policy "has no insuring clause of its own" (Filing No. 63 at 3). It does not recite the Underlying Policies' insuring clause for "liquor liability" or policy limits. The Policy

only incorporates that information by reference. (Filing No. 1-2 at 8.) Without evidence of the Underlying Policies' insuring clause or policy limits, the Court cannot determine the extent to which the Policy's exclusions preclude coverage, and thus cannot determine if coverage is illusory.[6] Defendants' failure to properly admit the Underlying Policies therefore precludes summary judgment in their favor on their illusory coverage argument. However, even if Defendants had properly admitted the Underlying Policies, Defendants' illusory coverage argument would still not succeed for the reasons discussed below.

Second, portions of Boylan's testimony constitute inadmissible legal conclusions. Boylan's report contains opinions regarding the scope of the Policy and the likelihood that the Policy would provide coverage if the Auto and Assault and Battery Exclusions were applied. (Filing No. 48 at 5–8.) However, the scope of coverage of an insurance policy is a question of law. *Eli Lilly & Co. v. Zurich Am. Ins. Co.*, 405 F. Supp. 2d 948, 950 (S.D. Ind. Dec. 12, 2005); *see Empire Fire & Marine Ins. Co. v. Sargent*, 211 F. App'x 506, 507 (7th Cir. 2007) (stating appeal regarding whether policy was illusory presented questions of law). Boylan's opinions regarding the Policy's scope and application are therefore inadmissible legal opinions. *United States v. Sinclair*, 74 F.3d 753, 758 n.1 (7th Cir. 1996). The remaining portions of Boylan's testimony, including his testimony on the nature of Central Hotel's business, the purpose for which it sought insurance coverage, and its premiums, all relate to Central Hotel's reasonable expectations, which are immaterial in determining whether coverage is illusory. *See Sunset Strip*, 2015 WL 4545876, at *7. The Court need not determine whether the remaining portions of Boylan's testimony are admissible until and unless it reaches step two of its illusory coverage analysis.

---

[6] The inadmissibility of the Underlying Policies does not pose any obstacle to Scottsdale's Motion for Summary Judgment, like it does for Davis' Motion. The Court does not need to know the scope of the Underlying Policies' coverage to determine whether the Auto Exclusion is unambiguous and applies to preclude any coverage.

### 3.      __Step One: Whether Coverage is Illusory__

Defendants argue that the Auto and Assault and Battery Exclusions make coverage illusory because they preclude coverage for "precisely the types of claims which could be expected to generate" covered claims (Filing No. 48 at 16).  However, the Policy here is not illusory because it precludes *some* reasonably expected claims.  To be illusory, the Policy must not provide coverage "under *any* reasonably expected set of circumstances." *Schwartz*, 174 F.3d at 879 (emphasis added) (citations omitted); *see Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.*, 949 F. Supp. 694, 699 (S.D. Ind. 1996).  In other words, coverage must be so "sufficiently remote [as] to be deemed illusory." *Monticello*, 949 F. Supp. at 701 (citation omitted).  This determination is a matter of degrees rather than absolutes.  *See id.*  An insurer "cannot avoid an illusory coverage problem by simply conceiving of a single hypothetical situation to which coverage would apply," *id.*, but as long as the policy "covers a risk reasonably anticipated by the parties, it is not illusory." *Schwartz*, 174 F.3d at 881.

The Policy and incorporated provisions of the Underlying Policies provide coverage for "liquor liability" (described in the Underlying Policies as "liability . . . imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage") exceeding one million dollars, but excluding claims arising from the use of an automobile or arising from assault and battery (Filing No. 1-2; Filing No. 48-2 at 7, 9).  Scottsdale argues the Policy provides coverage for several reasonably anticipated types of claims, including "premises liability, products liability, property damages, and other general liability claims," so coverage is not illusory (Filing No. 54). The Court agrees.

The Policy would provide coverage for claims arising from accidental injuries suffered by intoxicated patrons, including negligence, premises liability, personal injury, and wrongful death claims.  *Sunset Strip, Inc.*, 2015 WL 4545876, at *16–17 (noting that slip-and-fall cases are

common forms of liability that could arise in the operation of a bar).  It is reasonable to expect that a patron might trip and fall, or worse, due to that patron's intoxication. Caselaw nationwide demonstrates that such accidents are not uncommon and may result in over one million dollars in damages.  *See, e.g.*, *Neth. Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1175 (7th Cir. 2013) (discussing coverage for wrongful death claim after intoxicated decedent accidentally shot and killed himself); *Rizzi v. U.S. Liability Ins. Co.*, No. FSTCV095010775S, 2010 WL 3174008 (Conn. Sup. Ct. July 13, 2010) (discussing coverage for negligence claim after intoxicated decedent locked himself in bathroom, was escorted out of bar, fell down embankment, and died); *Estate of Menon v. GLL BVK Props. 2007 L.P.*, No. 37-2013-00030243, 2014 WL 9966611 (Ca. Sup. Ct. Nov. 13, 2014) (awarding $1.35 million to estate of intoxicated decedent who died while attempting to climb over metal gate at exit of defendant nightclub after being served alcohol by defendant); *Rivera v. Paraiso Club*, No. HUD-L-721-08, 2010 WL 3028818 (N.J. Sup. Ct. June 22, 2010) (awarding $1.49 million to intoxicated plaintiff who tripped down stairs after being served alcohol by defendant); *Thunderburk v. Park Place Ent. Corp.*, No. A500393, 2008 WL 4571774 (Nev. Dist. Ct., 8th Cir., July 23, 2008) (awarding $1.1 million to intoxicated plaintiff who tripped on unmarked curb after being served alcohol by defendant); *cf., e.g.*, *Bamberger v. Pilot Travel Ctrs. LLC*, No. 41D01-1012-CT-00084, 2013 WL 8149418 (Ind. Sup. Ct. May 23, 2013) (awarding $3.05 million in slip-and-fall case); *Knutilla v. Arctic Snow & Ice Control*, No. 45D04-0503-CT-00044, 2008 WL 7375473 (Ind. Sup. Ct. Oct. 8, 2008) (awarding $3.8 million).

The Policy would also cover claims arising from the accidental ingestion of foreign objects or chemicals in alcoholic drinks.  These types of claims "are a staple of the law of negligence. . . . [E]ven if such claims are not especially frequent, the claims are not so 'outlandish' that they cannot reasonably be expected to occur." *Sunset Strip, Inc.*, 2015 WL 4545876, at *16–17.  Damages for

claims involving the ingestion of foreign objects or chemicals can also readily exceed one million dollars. *See, e.g.*, *Enwright v. Town Ctr. Amusements, Inc.*, No. A-20-818364-C, 2022 WL 3974441 (Nev. Dist. Ct. Mar. 18, 2022) (awarding $8 million to plaintiff who ingested cleaning solution in beer served by defendant brewery); *Cronnon v. Cracker Barrel Old Country Store, Inc.*, No. 20886 (Tenn. Cir. Ct. Jan. 6, 2022) (awarding $9.3 million to plaintiff who was served chemicals instead of water by defendant restaurant); *Farroll v. O'Charley's L.L.C.*, No. CV-2014-900900.00, 2017 WL 7049778 (Ala. Cir. Ct. Feb. 22, 2017) (awarding $1.6 million to plaintiff who suffered damages after swallowing a shard of glass in food served by defendant restaurant).

"[S]pilled drinks on customers" is another class of covered claims that would reasonably be expected to arise from the sale and service of alcohol.  Although a spilled drink is often relatively harmless, alcohol's flammable properties make it uniquely hazardous.  *See, e.g.*, *Busche v. Downtown Iowa City Etcetera*, No. LACV 062989, 2004 WL 3951751 (Iowa St. Ct. Dec. 1, 2004) (awarding $1.67 million to plaintiff who suffered severe burns after bartender attempted trick involving fire and alcohol); *Maloney v. Silken Thomas Rest. Inc.*, No. 114182/00, 2001 WL 36295199 (N.Y. Sup. Ct. Apr. 19, 2001) (awarding $1 million to plaintiff who suffered burns after defendant accidentally set fire to liquor spilled on bar); *Linville v. Bacardi Corp.*, 92-08302-CA, 1992 WL 736988 (Fla. Cir. Ct. Oct. 2, 1992) (settling case for $1 million to plaintiff who suffered burns when bottle of rum ignited while bartender prepared flaming cocktail); *Feinstein v. Ruby Tuesday Rest.*, No. 82-587-I, 1983 WL 245792 (Tenn. St. Ct. June 1, 1983) (awarding $1 million to waitress who suffered burns when flaming cocktail exploded during preparation); *see also Liebeck v. McDonald's Restaurants*, No. CV-93-02419, 1994 WL 906628 (N.M. Dist. Ct. Aug. 1, 1994) (awarding $2.9 million to plaintiff who suffered severe burns from McDonald's coffee, prior to reduction by Court to $480,000.00).

In her reply brief, Davis argues that the cases cited by Scottsdale are inapplicable because they did not involve excess liability policies, dram shop liability, and/or liquor liability policies.[7] But Scottsdale's cases, and the additional cases cited above, nevertheless exemplify the types of risks reasonably anticipated by the parties that would be covered by the Policy despite the Auto and Assault and Battery Exclusions.  Neither Davis nor Central Hotel has shown that these types of risks would never (or only rarely) be covered by the Policy, so their illusory coverage argument cannot succeed.

Because the Policy is not illusory, the Court need not reach step two of the illusory coverage analysis. The Policy's unambiguous terms control, and the Auto Exclusion precludes coverage for the State Court Action and for any other claims arising from the collision between Davis and Beagles.

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff Scottsdale Insurance Company's Motion for Summary Judgment (Filing No. 37) and **DENIES** Defendant Padget Davis' Motion for Summary Judgment (Filing No. 47).

The Court finds that Plaintiff Scottsdale Insurance Company is not obligated under the Policy to defend and/or indemnify Central Hotel for the claims asserted against Central Hotel in the State Court Action or for any other claims arising from the October 9, 2019 automobile collision between Davis and Beagles.

Final Judgment will be entered accordingly.

---

[7] In her reply brief, Davis also argues that coverage for some of the claims identified by Scottsdale would be precluded under the Policy's other exclusions, like its "absolute firearms" exclusion (Filing No. 63 at 8). But Davis may not rely on additional Policy exclusions in arguing that coverage is illusory.  Although sufficient claims exists even considering this argument, "[i]t is well-settled that new arguments cannot be made for the first time in reply." *Gold v. Wolpert*, 876 F.2d 1327, 1331, n.6 (7th Cir. 1989).

**SO ORDERED**.

Dated: 9/26/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Edward M. O'Brien
WILSON ELSER
edward.obrien@wilsonelser.com

Nicholas J. Davis
O'BRYAN BROWN & TONER PLLC
davisn@obtlaw.com

Steven K. Huffer
S.K. HUFFER & ASSOCIATES, P.C.
steveh@hufferlaw.com

Scott A. Weathers
ISAACS & ISAACS PSC
scott.weathers@isaacsandisaacs.com

Benjamin Joseph Weigel
O'BRYAN, BROWN AND TONER, PLLC
weigelb@obtlaw.com